UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DONTE WOODS,

Petitioner,

v.

MANUEL PORTILLO, *et al.*,

Respondents.

Case No. 2:23-cv-00991-ART-NJK

ORDER

## I. Summary

This action is a petition for writ of habeas corpus by Donte Woods, who is represented by appointed counsel. The action is before the Court for adjudication of the merits of Woods's claims. The Court denies Woods's petition.

## II. Background

On May 26, 2017, Woods was convicted, upon a jury verdict, in Nevada's Eighth Judicial District Court (Clark County), of attempted murder with use of a deadly weapon; battery with use of a deadly weapon resulting in substantial bodily harm; discharging a firearm at or into an occupied structure, vehicle or watercraft; attempted invasion of the home with use of a deadly weapon; and attempted burglary while in possession of a firearm. (ECF No. 16-33 (jury verdict); ECF No. 16-38 (judgment of conviction).) He was sentenced to an aggregate of ten to forty years in prison. (ECF No. 16-38.)

Woods's convictions resulted from a shooting on the night of April 19, 2016. An individual named Tyrone Golden was shot several times but survived. The State charged Woods, Deon Smalley and Derrell Christy, with crimes related to that shooting. Woods was tried separately. The State's primary evidence against Woods was Golden's identification of him as one of the assailants. (*See*

ECF No. 17-20 at 1 (order of affirmance of the Nevada Supreme Court on direct appeal); ECF No. 22 at 5–10 (statement of facts in Woods's amended petition).)

Woods appealed from the judgment of conviction and the Nevada Supreme Court affirmed on September 21, 2018. (ECF No. 17-3 (opening brief on appeal); 17-20 (order of affirmance).)

While his direct appeal was still pending, Woods filed a pro se post-conviction habeas petition in state court. (ECF No. 17-5.) The district court denied the petition. (ECF No. 17-14.) Woods appealed. (ECF Nos. 67, 68, 69.) On March 19, 2020, the Nevada Court of Appeals affirmed in part, reversed in part, and remanded. (ECF No. 17-39.) The court remanded the case for an evidentiary hearing regarding Woods's claim that his trial counsel was ineffective for not presenting an alibi defense. (*Id.*) The district court held the evidentiary hearing (ECF No. 18-15 (transcript)), and then denied the claim. (ECF No. 18-16.) Woods appealed. (ECF No. 18-24 (opening brief on appeal).) The Nevada Court of Appeals affirmed on February 14, 2023. (ECF No. 18-31.)

This Court received a pro se petition for writ of habeas corpus from Woods for filing on June 27, 2023. (ECF Nos. 2-1, 6.) The Court granted Woods's motion for appointment of counsel and appointed counsel. (ECF No. 5.) With counsel, Woods filed an amended habeas petition on March 8, 2024. (ECF No. 22.) Woods's amended petition asserts three claims:

> 1. "Mr. Woods' federal constitutional rights under the Fifth and Fourteenth Amendments were violated by the fact that there was insufficient evidence to support the convictions."
>
> 2. "Mr. Woods' federal constitutional rights under the Fifth, Sixth and Fourteenth Amendments were violated by his trial counsel's failure to adequately investigate and present his alibi defense."
>
> 3. "Mr. Woods' federal constitutional rights under the Fifth, Sixth and Fourteenth Amendments were violated by cumulative error sufficient to overturn the convictions."

(*Id.*)

Respondents filed a motion to dismiss, arguing that Claims 1 and 3 are unexhausted in state court and that Claim 3 is not cognizable. (ECF No. 29.) In an order entered on March 4, 2025, the Court denied the motion to dismiss, without prejudice to Respondents asserting the same defenses to Claim 3 in their answer. (ECF No. 34.)

Respondents filed their answer on August 14, 2025. (ECF No. 41.) Woods filed a reply on August 28, 2025 (ECF No. 42), and a supplement to the reply on August 31, 2025 (ECF No. 43).

III. Discussion

A. Standard of Review

28 U.S.C. § 2254(d) sets forth the standard of review under the Antiterrorism and Effective Death Penalty Act (AEDPA), which is generally applicable to habeas claims adjudicated on their merits in state court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S.

362, 405–06 (2000)) (internal quotation marks omitted). A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413) (internal quotation marks omitted). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409). The analysis under section 2254(d) looks to the law that was clearly established by United States Supreme Court precedent at the time of the state court's decision. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (the AEDPA standard is "a difficult to meet … and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." (quoting *Harrington*, 562 U.S. at 102; *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)) (internal quotation marks omitted)).

B. Claim 1 – Sufficiency of the Evidence

In Claim 1, Woods claims that his federal constitutional rights were violated because there was insufficient evidence presented at trial to support his convictions. (ECF No. 22 at 13–19.) Woods argues that "there was insufficient evidence to prove that there was more than one shooter, or that Mr. Woods was

even present during the shooting, or that he conspired with anyone to harm Golden." (*Id.* at 14.) And Woods argues: "The evidence was … insufficient to prove that Mr. Woods was present or had any conspiratorial or other relationship with the lone shooter." (*Id.* at 15.)

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970); *see also Coleman v. Johnson*, 566 U.S. 650, 655 (2012) ("[T]he minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law."). A federal habeas petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). On direct review of a sufficiency of the evidence claim, a state court must determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The evidence is to be viewed "in the light most favorable to the prosecution," and it must be presumed "that the trier of fact resolved any … conflicts in favor of the prosecution." *Id.* at 319, 326. "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 4 (2011).

In a federal habeas case such as this, where the insufficiency-of-evidence claim was adjudicated in state court, the claim is subject to two layers of judicial deference. *Coleman*, 566 U.S. at 651. First, the Court must defer to the jury's findings of fact, as required by the *Jackson* standard:

> [I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.

*Id.* (quoting *Cavazos*, 565 U.S. at 2). "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.''" *Id.* (quoting *Cavazos*, 565 U.S. at 2, and *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *see also Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011) ("[W]hen we assess a sufficiency of evidence challenge in the case of a state prisoner seeking federal habeas corpus relief subject to the strictures of AEDPA, there is a double dose of deference that can rarely be surmounted.").

Woods asserted this insufficiency-of-evidence claim on his direct appeal. (ECF No. 17-3 at 19–23.) The Nevada Supreme Court denied Woods relief on the claim, ruling as follows:

> In reviewing a challenge to the sufficiency of the evidence supporting a criminal conviction, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A conviction may be upheld even though the State's primary evidence is the testimony of the victim because it is the jury's province to determine what weight and credibility to give to the evidence. *See Hutchins v. State*, 110 Nev. 103, 107, 867 P.3d 1136, 1139 (1994).
>
> Here, a rational jury could convict Woods based upon Golden's testimony and other evidence the State presented at trial. Thus, we conclude the evidence was sufficient to support the judgment of conviction.

(ECF No. 17-20 at 3.)

Woods argues that the Nevada Supreme Court provided no explanation for its ruling. (ECF No. 22 at 18–19.) But that is not so. The Nevada Supreme Court's ruling is clear: "A conviction may be upheld even though the State's primary evidence is the testimony of the victim because it is the jury's province to determine what weight and credibility to give to the evidence" (citing *Hutchins*,

110 Nev. at 107, 867 P.3d at 1139), and "a rational jury could convict Woods based upon Golden's testimony and other evidence the State presented at trial." (ECF No. 17-20 at 3.) The Nevada Supreme Court's ruling was based on settled legal principles, and it was objectively reasonable.

Golden testified at trial that when he was shot, he saw three people outside his residence, and Woods was one of them. ECF No. 16-27 at 34–42, 54. And most importantly here, Golden testified that in fact Woods was one of the two assailants who shot at him:

> Q And, specifically, the person that you identified in court here today [Woods], he was one of the two individuals that came from the right?
>
> A Yes.
>
> Q Did either of those individuals have a firearm?
>
> A Yes. Because I got shot by both of them.

*Id.* at 42. Golden's testimony, to the effect that Woods, acting in concert with two others, shot at him from close range, was plainly sufficient to support his attempted murder conviction under any of the three theories relied upon by the State: direct criminal liability, aiding and abetting, or conspiracy.

All of Claim 1, as presented by Woods in his first amended petition, turns on Woods's attempt to discredit Golden's testimony. (*See* ECF No. 22 at 13–19; *see also* ECF No. 42 at 2–7 (in his reply, as well, all Woods's arguments seek to discredit Golden's testimony).) But on a challenge to the sufficiency of the evidence, the court must view the evidence in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319, 326. The credibility of witnesses is generally beyond the scope of a review of the sufficiency of the evidence. *Schlup v. Delo*, 513 U.S. 298, 330 (1995); *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (federal courts reviewing sufficiency of evidence claims "must respect the province of the jury to determine the credibility of witnesses…").

In his reply, Woods focuses his argument on the sufficiency of the evidence showing that he had specific intent to kill Golden. However, under Nevada law, intent to kill may be inferred by the jury from the "individualized, external circumstances of the crime, which are capable of proof at trial." *Sharma v. State*, 118 Nev. 648, 659, 56 P.3d 868, 874–75 (2002). "[O]ne such circumstance may well be the use of a deadly weapon." *Id.* (citing *Dearman v. State*, 93 Nev. 364, 367, 566 P.2d 407, 409 (1977)); *see also Cooper v. State*, 94 Nev. 744, 745, 587 P.2d 1318, 1319 (1978) (jury could reasonably infer specific intent from facts proven at trial, including evidence that the defendant fired two shots in the direction of the victim from twenty to thirty-five feet); *Moser v. State*, 91 Nev. 809, 812 544 P.2d 424, 426 (1975) ("[I]ntention to kill may be ascertained or deduced from the facts and circumstances of the killing, such as the use of a weapon calculated to produce death, the manner of the use, and the attendant circumstances characterizing the act."); *Ngo v. Giurbino*, 651 F.3d 1112, 1114 (9th Cir. 2011) (in habeas case challenging California conviction on ground of insufficiency of evidence, the court of appeals stated: "As the California Court of Appeals observed in its decision affirming Ngo's convictions, 'when shots are fired toward a group of people, the jury may draw a reasonable inference from all the circumstances that the shooter intended to kill every person in the group.'"). Again, this Court must assume that the jury believed Golden's testimony that Woods was present with the other two assailants when he was shot, and that Woods shot at him, foreclosing Woods's argument that there was insufficient evidence of his specific intent.

Woods does not claim that Golden's testimony was improperly admitted into evidence, that the jury instructions were improper, or that any of the three theories of criminal liability presented by the prosecution—direct criminal liability, aiding and abetting, conspiracy—were legally faulty. Claim 1 is purely a claim that the evidence presented at trial was insufficient to support his

convictions. Golden's testimony was sufficient. The Nevada Supreme Court's ruling was not objectively unreasonable.

In his reply, Woods points out that the jury rendered a general verdict, making it impossible to know whether the jury found him guilty of attempted murder on the theory that he himself attempted to kill Golden, the theory that he aided and abetted the attempted murder, or the theory that he conspired with others to attempt to kill Golden. ECF No. 42 at 6. Woods cites *Keating v. Hood*, 191 F.3d 1053, 1062 (9th Cir. 1999), and *Bolden v. State*, 121 Nev. 908, 923–24 (2005), for the proposition that "where … the jury returns a general verdict that could have been based on a legally valid theory or a legally invalid theory, and there is no way to determine which one the jury relied on, the verdict cannot stand." *Id.* But Woods's reliance on that well-established principle fails for two fundamental reasons. First, viewing the record as it must, the Court determines that there was sufficient evidence to convict Woods of attempted murder under *any of the three theories*. Second, even if there was insufficient evidence to support one or two of the prosecution's theories (there was not), the rule represented by *Keating* and *Bolden* does not apply to a claim that there was insufficient evidence to support a theory of criminal liability; the rule only applies to a claim that one of the theories was *legally invalid*. *Griffin v. United States*, 502 U.S. 46, 59 (1991). "[W]hen a defendant is convicted of a crime based on alternative theories, and there is sufficient evidence to convict on one, it is unnecessary for a reviewing court to consider whether the evidence is sufficient on the alternative ground." *U.S. v. Walker*, 99 F.3d 439, 442 (D.C. Cir. 1996) (citing *Griffin*, 502 U.S. at 56–57); *see also Griffin*, 502 U.S. at 56 (noting that invalidating a conviction based on insufficiency of evidence to support one theory of criminal liability where another theory is supported by sufficient evidence would be "unprecedented and extreme"); *United States v. Gonzalez*, 906 F.3d 784, 790–91 (9th Cir. 2018) (rejecting an insufficiency of evidence claim where

evidence was sufficient on at least one theory); *United States v. Dain*, 258 Fed. App'x 90, 93 (9th Cir. 2007) (same).

In short, applying the *Jackson* sufficiency-of-evidence standard in conjunction with the AEDPA standard of review, the Court determines that the Nevada Supreme Court did not rule in an objectively unreasonable manner in determining that there was sufficient evidence to support his conviction. The Court denies Woods habeas corpus relief on Claim 1.

C. Claim 2 – Trial Counsel's Handling of Woods's Alibi Defense

In Claim 2, Woods claims that his federal constitutional rights were violated on account of ineffective assistance of counsel because his counsel failed to adequately investigate and present his alibi defense. (ECF No. 22 at 19–30.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test for claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the attorney's representation "fell below an objective standard of 'reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Where a state court adjudicated a claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *Harrington*, 562 U.S. at 104–05. In *Harrington*, the Supreme Court explained that, in such cases, "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential … and when the two apply in tandem, review is 'doubly' so."

*Id*. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Cheney v. Washington*, 614 F.3d 987, 994–95 (2010) (double deference required with respect to state court adjudications of *Strickland* claims).

Woods raised this claim in his pro se state habeas petition. (ECF No. 17-5) The state district court denied relief. (ECF No. 17-14.) Woods appealed, and the Nevada Court of Appeals affirmed the denial of all Woods's claims except this one. (ECF No. 17-39.) Regarding this claim, the court reversed and remanded, instructing the state district court to hold an evidentiary hearing. (*Id.*) The state district court held an evidentiary hearing on March 11, 2022. (ECF No. 18-15 (transcript).) Woods was represented by counsel at the evidentiary hearing. (*See* ECF Nos. 18-13, 18-15.) Following the evidentiary hearing, the state district court denied relief on the claim. (ECF No. 18-16.) Woods appealed, and the Nevada Court of Appeals affirmed, ruling as follows:

> Woods first contends the district court erred by denying his claim that trial counsel was ineffective for failing to investigate and present his alibi defense. Woods alleged that counsel should have investigated all of his alibi witnesses, interviewed the witnesses himself, and investigated Woods' phone and financial records in relation to his alibi defense.
>
> To demonstrate ineffective assistance of trial counsel, a petitioner must show counsel's performance was deficient in that it fell below an objective standard of reasonableness and prejudice resulted in that there was a reasonable probability of a different outcome absent counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432–33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). Both components of the inquiry must be shown, *Strickland*, 466 U.S. at 687, and the petitioner must demonstrate the underlying facts by a preponderance of the evidence, *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004). We give deference to the district court's factual findings if supported by substantial evidence and not clearly erroneous but review the court's application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).
>
> The district court held an evidentiary hearing on this claim. Thereafter, it concluded that counsel made a reasonable, strategic decision not to pursue an alibi defense. The district court's decision is supported by substantial evidence in the record.

> At the hearing, Woods admitted into evidence a letter he wrote to counsel before trial containing his alibi defense and a list of six alibi witnesses. Counsel testified that he did not recall receiving the letter before trial but that he was aware Woods had a potential alibi: Woods claimed he was at his grandmother's house for Woods' uncle's funeral. Counsel hired an investigator who interviewed Woods and three of the six people on Woods' list. Counsel or the investigator were in contact with two other people on Woods' list. Counsel explained that after reviewing the investigator's reports and consulting with the investigator, he did not find the alibi credible. Counsel further explained that his decision was also based on the existence of a potential witness who placed Woods at the location of the crime and, the day after the shooting, heard him and others talking about shooting someone.
>
> Woods called only two of the six alibi witnesses he identified in his letter to testify at the hearing: Wood's mother and the mother of Woods' children. Woods' mother testified that Woods was with her at Woods' grandmother's house at the time of the offense. The district court found her testimony was not credible, and this court will not "evaluate the credibility of witnesses because that is the responsibility of the trier of fact." *Mitchell v. State*, 124 Nev. 807, 816, 192 P.3d 721, 727 (2008). The district court also found the evidence related to the mother of Woods' children did not support Woods' alibi except to the extent it showed Woods spent time at his grandmother's house on a regular basis and that Woods' children might have been present in the home on the offense date and the day before. Substantial evidence supports the district court's finding. Finally, Woods did not testify at the evidentiary hearing, nor did he present evidence regarding his phone or financial records. In light of the evidence presented at the evidentiary hearing, Woods failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness or a reasonable probability of a different outcome had counsel further investigated or presented an alibi defense. Therefore, we conclude the district court did not err by denying this claim.

(ECF No. 18-31 at 2–4.) The Nevada Court of Appeals' ruling was reasonable.

At the evidentiary hearing, Woods presented a copy of a letter from him to his trial counsel, Dennis M. Lay, dated October 16, 2016, in which he claimed that on April 19, 2016, the night of the shooting, he "was at home with [his] family," at his grandmother's home, where they "had dinner to plan for a funeral." (ECF No.18-15 at 37; ECF No. 22-1 at 18–20.) The letter listed seven people Woods said would "verify everything I'm saying:"

- his grandmother, Anita Payne;
- his mother, Comia Roshawn Osborne;
- his sister, Crystal Barnes;

- his brother, Dominique Woods;
- his brother's wife, Deneisha (or Reneisha or Neisha) Conway;
- his children's mother, Breyanna Hall;
- his girlfriend, Shanta (or Shontay) Ross.

(ECF No. 22-1 at 20, ECF No. 18-15 at 38–39.) Lay testified that he did not recall receiving the letter from Woods (ECF No. 18-15 at 8, 37–38), but he remembered that Woods claimed an alibi; his memory was that Woods said "he was at a funeral for an uncle who had passed away." (*Id.* at 11.) Lay had an investigator talk to Woods about his claimed alibi and he had the investigator locate and interview people listed in the letter. (*Id.* at 10–24, 42.) Woods's grandmother, Anita Payne, told the investigator that she could not recall where she was on the night of April 19, 2016, and she said there was no funeral in Las Vegas for Woods's uncle. (*Id.* at 12.) Woods's children's mother, Breyanna Hall, told the investigator that she was not with Woods that night because she was in California. (*Id.* at 17, 19–21.) Woods's sister, Crystal Barnes, told the investigator she was with Woods that night, but "she was not very clear on the dates and times potentially," and "she was emotional and … not sure of the details." (*Id.* at 17–18, 20–23.) Lay spoke with Woods's mother, Comia Roshawn Osborne, but did not "interview her as a potential witness;" Osborne did not mention Woods being at a family gathering on the night of April 19, 2016. (*Id.* at 9–10, 16, 27–28.) Lay testified that his investigator attempted to obtain a photograph of Woods at an April 19, 2016, family gathering, but was unable to do so. (*Id.* at 29, 33–36.) Lay testified that he did not obtain telephone or credit card or debit card data showing Woods's location on April 19, 2016, because of the weakness of Woods's alibi and because he knew there was a potential witness that could place Woods at the scene of the shooting. (*Id.* at 25–27, 31, 44–45.) Lay also believed that the potential witness would say she heard Woods the day after the shooting talking about having shot someone. (*Id.* at 31, 44–45.) As for Woods's brother,

Dominique Woods, Lay testified that he was not interviewed with respect to Woods's claimed alibi, but that there were contacts with him:

> Q So there were contacts for what?
>
> A His brother was contacting allegedly the victim in the case. There [was] another proceeding involving two co-defendants, and it was sort of proceeding on the same track. And the brother was getting involved by contacting the victim, videotaping the victim and was potentially involved in the case as a potential co-defendant. Videotaping the victim and interacting with him at preliminary hearings and things like that after the incident and then also, there was an allegation that potentially he was involved.
>
> Q So you had information that the brother was, in summary, arguably dissuading?
>
> A Correct.

(*Id.* at 40–41.) Lay testified that his investigator followed up with Dominique, and if Dominique had been able to provide information that Woods was at a family gathering instead of at the scene of the shooting, he would have had him interviewed further. (*Id.* at 41–42.) Lay concluded that Woods's alibi defense was not viable, because it strained credibility. (*Id.* at 11–12, 39, 44–45.)

At the evidentiary hearing, in addition to Lay, Woods called as witnesses his mother, Comia Roshawn Osborne, and the mother of his children, Breyanna Hall (ECF No. 18-15 at 46–68.) Osborne testified—much as she told Lay's investigator—that there was a gathering at Payne's home in memory of Woods's deceased uncle on the evening of April 19, 2016, and Woods was there. (*Id.* at 50–52, 56–59.) Hall testified that she was at work on the evening of April 19, 2016—not that she was in California at the time as she told the investigator. (*Id.* at 61–68.) Hall did not testify that she or Woods was at the supposed family gathering. Notably, Hall's testimony arguably contradicted Osborne's: Osborne testified that Hall was at the family gathering. (*Id.* at 51.)

So, the bottom line is that Woods's trial counsel did investigate his claimed alibi and found that it strained credibility and determined that presenting it at trial would have done Woods's defense more harm than good, and, of the seven

people Woods said would substantiate his alibi, only one testified at the evidentiary hearing that she was with Woods the night of the shooting, and that was Woods's mother, whose testimony the state district court found not credible. Woods did not testify at the evidentiary hearing, and he did not present any telephone or credit or debit card records to support his claimed alibi.

Affording the Nevada Court of Appeals' ruling the deference required under the AEDPA standard, and affording Woods's trial counsel the deference required under *Strickland*, the Court concludes that court's ruling was not contrary to or an unreasonable application of *Strickland* or any other clearly established federal law. The Court denies Woods habeas corpus relief on Claim 2.

D. Claim 3 – Cumulative Error

In Claim 3, Woods claims that his federal constitutional rights were violated on account of cumulative effect of the errors alleged in Claims 1 and 2. (ECF No. 22 at 30–31.) Because the Court finds no violation of Woods's federal constitutional rights with respect to Claim 1 or Claim 2, there are no errors to consider cumulatively. The Court denies Woods habeas corpus relief on Claim 3.

E. Request for an Evidentiary Hearing

In his amended petition, Woods makes a request for an evidentiary hearing. (ECF No. 22 at 31.) His request, however, is completely *pro forma*; he does not specify what factual issue he believes requires an evidentiary hearing, and he makes no showing that an evidentiary hearing is warranted. *See* 28 U.S.C. § 2254(e)(2). The Court denies Woods's request for an evidentiary hearing.

F. Certificate of Appealability

For a certificate of appealability ("COA") to issue, a habeas petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). Where the district court denies habeas claims on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000). Applying this standard, the Court finds that a certificate of appealability is unwarranted.

IV. Conclusion

It is therefore ordered that Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 22) is denied. Petitioner is denied a certificate of appealability. The Clerk of the Court is directed to enter judgment accordingly and close this case.

It is further ordered that, pursuant to Federal Rule of Civil Procedure 25(d), Manuel Portillo is substituted for Ronald Oliver as the respondent warden. The Clerk of the Court is directed to update the docket to reflect this change

DATED THIS 30th day of July, 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE